IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CLARENDON NATIONAL INSURANCE
COMPANY,

                Plaintiff,

v.                                                                 Civ. No. 08-664 MV/ACT

RBC, L.L.C. d/b/a CAR CARE CENTER,
a New Mexico limited liability company,
and JEREMIAH DOWLING,

                Defendants.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on Plaintiff Clarendon National Insurance Company's Second Motion for Summary Judgment (Doc. No. 48, filed July 27, 2009). For the reasons stated below, the Motion will be **GRANTED in part** and **DENIED in part**.

**Procedural Background**

      This case is a collateral proceeding brought by Clarendon National Insurance Company ("Clarendon") seeking a declaratory judgment that it has no duty to defend or indemnify RBC or Dowling in the primary, state court action, the *McNair* lawsuit. (*See* Complaint, Doc. No. 1, filed July 17, 2008).

      William McNair, as personal representative on behalf of the Estate of Sharon McNair, brought the *McNair* lawsuit against RBC, Dowling and Clarendon in state court to recover damages for the wrongful death of Sharon McNair. (*See* Doc. No. 48-3, filed July 27, 2009). The *McNair* complaint alleges that Dowling, an employee of RBC, was driving a vehicle owned by RBC when he struck Sharon McNair with the vehicle he was driving causing her death. (*See id.*). The *McNair* complaint alleges that the sole and proximate cause of Sharon McNair's death was Dowling's

negligence and that RBC is liable under *respondeat superior* because Dowling was employed by RBC and was acting within the scope and course of his employment. (*See id.*).

**Undisputed Facts**

RBC runs an auto maintenance business in Las Cruces, New Mexico. (Motion ¶ 5). RBC employed Dowling who, during the course and scope of his employment, ran over Sharon McNair with a company vehicle, killing her. (*Id.*). Dowling was given a term of life in prison, followed by five years parole on the first degree murder (depraved mind) conviction in addition to a term of three years, followed by two years parole for the aggravated battery (deadly weapon) conviction. (*Id.* ¶ 7).

In June, 2008, William McNair filed a lawsuit in state court against RBC and Dowling ("*McNair* lawsuit"). (Motion ¶ 3). RBC and Dowling then tendered the summons and complaint to Clarendon demanding defense and indemnity under the *McNair* complaint. (*Id.* ¶ 4). Clarendon agreed to defend RBC and Dowling in the *McNair* lawsuit pursuant to a full and complete reservation of rights. (*Id.*). The *McNair* complaint alleges that, through the actions of Dowling, RBC is vicariously liable for damages caused as a result of the death of Sharon McNair under the principle of respondeat superior. (*Id.* ¶ 5). The *McNair* complaint further alleges RBC "authorized, participated in, or ratified the conduct of its employee, which was malicious, willful, reckless and with wanton disregard of the rights of Sharon McNair." (*Id.*).

Clarendon had issued a commercial liability policy to RBC. (Motion ¶ 1). The policy contains coverages for both commercial general liability ("CGL") and commercial auto ("CA"). (Motion ¶ 2).

The CGL insuring agreement states:

A.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

B.      This insurance only applies to "bodily injury" and "property damage" if it was caused by an "occurrence," occurring during the policy period.

(*Id.* ¶ 12). An occurrence under the CGL policy is defined as "an accident," including "continuous or repeated exposure to substantially the same general, harmful conditions." (*Id.* ¶ 13). An insured, under the CGL policy is, in part, defined as employees "but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." (*Id.* ¶ 14). The CGL coverage contains the following exclusions:

A.      Expected or intended injury

         "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

* * *

G.      Aircraft, auto or watercraft

         "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or water craft owned or operated by or rented or loaned to any insured. Use includes operation, "loading and unloading"

This exclusion applies even if the claims against any insured alleged negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involve the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or loaned to any insured.

(*Id.* ¶ 15).

3

The CA (commercial auto) insuring agreement issued to RBC as the named insured provides: "We will pay all sums an insured legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an "accident" and resulting from the ownership, maintenance or use of a covered 'auto.'" (Motion ¶ 8). An insured is defined as "you" or "RBC" for any covered "auto" and "[a]nyone else while using with your permission, a covered "auto" you own, hire or borrow . . ." (*Id.* ¶ 9). An accident is defined as "continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage." (*Id.* ¶ 10). The CA coverage contains the following relevant exclusions: "Bodily injury . . . expected or intended from the standpoint of the insured." (*Id.* ¶ 11).

**Disputed Facts**

Plaintiff's Undisputed Fact No. 6 states:

For the actions alleged in the McNair Complaint, Dowling was charged with, among other crimes arising out of the actions of December 21, 2005 which led to the death of Sharon McNair, first degree murder (depraved mind). Dowling was convicted by a jury on April 12, 2007 of the following crimes:

   A.   First degree murder (depraved mind), a capital offense, contrary to §30-2-1(A)(3), NMSA, 1978, occurring on or about December 21, 2005;

   B.   Aggravated battery (deadly weapon), a third degree felony, contrary to §30-3-5(C), NMSAA 1978, occurring on or about December 21, 2005;

(Motion ¶ 6).

RBC challenges Fact No. 6 "to the extent that it is not complete and accurate." (RBC's Response at 2). RBC states that it

is clear that a separate criminal complaint, with its own allegations and elements, had to necessarily be established and was filed by the State of New Mexico against the Defendant Jeremiah Dowling. Defendant RBC, LLC was not a party to that proceeding and a wholly different standard of proof and elements were required to be established in order to obtain a criminal conviction.

(*Id.*).  RBC also asserts that "the facts underlying Defendant Dowling's actions are in great dispute" and disputes the assertion that Dowling's actions were intended or expected.  (*Id.*).

Intervenor McNair does not dispute Fact No. 6.  (McNair Response at 5).  McNair adds that the crime of depraved mind murder is not a specific intent crime and that the acts giving rise to the *McNair* lawsuit also resulted in Dowling's conviction for reckless driving.  (*Id.*).

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).  In the Tenth Circuit:

> the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment.  When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.  The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial.
>
> Conversely, if the moving party has the burden of proof, a more stringent summary judgment standard applies.  Thus, if the moving party bears the burden of proof, to obtain summary judgment, it cannot force the nonmoving party to come forward with specific facts showing there is a genuine issue for trial merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact.  Instead, the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case.

*Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008)(citations and quotation marks omitted).

**Duty to Defend**

An insurer's duty to defend, which is distinct from the duty to indemnify, "arises out of the nature of the allegations in the complaint." *Miller v. Triad Adoption and Counseling Services, Inc.*,

65 P.3d 1099, 1103 (N.M. Ct. App. 2003).  "If the allegations of the complaint or the alleged facts tend to show that an occurrence comes within the coverage of the policy, the insurer has a duty to defend regardless of the ultimate liability of the insured."  *Id.*; *see also Sena v. Travelers Ins. Co.*, 801 F.Supp. 471, 473 (D.N.M. 1992) (*quoting State Farm Fire and Cas. Co. v. Price*, 684 P.2d 524, 528 (N.M. Ct. App. 1984))("The duty to defend is not determined by the ultimate liability of the insurance company, but is based solely on the allegations of the complaint.  Only where the allegations are completely outside policy coverage may the insurer justifiably refuse to defend.").

"Generally, a determination of whether an exclusion relieves an insurer from a duty to defend must be made in the primary lawsuit, and not in an action for declaratory judgment, because it is a factual question."  *Lopez v. New Mexico Public Schools Ins. Authority*, 870 P.2d 745, 748 (N.M. 1994).  "[I]n order for the court in the collateral proceeding to determine that no duty to defend exists, it must be able to say, as a matter of law, that all claims set forth in the complaint arose out of acts excluded from coverage under the policy."  *Transamerica Ins. Group v. Hinkle-Keeran Group, Inc.*, 53 F.3d 343, 1995 WL 251054 *5 (10th Cir. 1995).

**The Commercial General Liability ("CGL") Policy**

Clarendon seeks a declaration that it has no duty to defend or indemnifty under the CGL policy.  (Motion at 15).  The CGL policy contains an exclusion excluding coverage for "'Bodily injury' . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured."  (Motion ¶ 15 at 4).  RBC and Intervenor McNair do not dispute that the CGL policy contains the auto exclusion.  RBC and Intervenor McNair also do not dispute that  Defendant Dowling, an employee of RBC, struck and killed Sharon McNair with an automobile owned by RBC.  In their response briefs, neither RBC nor

Intervenor McNair challenge Clarendon's claim that Clarendon is entitled to summary judgment on the CGL policy due to the "Auto" exclusion. Defendant Dowling, who is incarcerated, did not respond.

The Court will grant partial summary judgment in favor of Clarendon with respect to the CGL policy. The CGL policy has an "auto" exclusion which excludes coverage for bodily injury arising out of the use of any auto owned or operated by any insured. The claim in the *McNair* lawsuit arose from Dowling's operation of a vehicle owned by RBC. Clarendon has no duty to defend or indemnify Defendants under the CGL policy because the claim in the *McNair* complaint falls within the "auto" exclusion in the CGL policy.

**The Commercial Auto ("CA") Policy**

Clarendon contends that it has no duty under the CA policy to defend or indemnify Defendants because Defendant Dowling was convicted of first degree murder (depraved mind) for killing Sharon McNair. (*See* Motion at 5-15). Clarendon argues that the CA policy provides coverage for accidents, not for intentional acts, and that because depraved mind murder is an intentional act, Sharon McNair's death was not the result of an accident and thus is not covered by the CA policy. (*See id.*). Clarendon cites an Illinois state supreme court case which "found that the criminal conviction [for first degree murder] estops the insured and victim from asserting any right to a defense base on allegations of negligence" to support its assertion that asserts that the negligence allegation in the McNair does not trigger coverage. (*See* Motion at 11-12).

Clarendon also argues that Dowling's conviction of first degree murder (depraved mind) conclusively resolves the issue of Clarendon's duties to defend and indemnify in Clarendon's favor because depraved mind murder is an intentional act and, therefore, is not an "accident" under the

7

CA policy. (Motion at 8-9). First degree murder (depraved mind) is "the killing of one human being by another without lawful justification or excuse, by any of the means with which death may be caused . . . by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life." N.M. Stat. Ann. § 30-2-1(A)(3). The "crime of depraved mind murder does not require specific intent to kill." *New Mexico v. Johnson*, 707 P.2d 1174, 1178 (N.M. Ct. App. 1985). "[D]epraved mind murder is defined primarily by its consequences–a killing resulting from defendant's outrageous acts regardless of his intent." *Id.* at 1179. Clarendon contends that "[so] long as the insured's act was voluntary and deliberate and the injury resulting was the direct and natural result thereof, an accident is not alleged even if the insured did not intend the particular type of harm resulting." (Motion at 6).

> Death or injury does not result from accident or accidental means within the terms of an accident policy where it is the *natural result of the insured's voluntary act*, unaccompanied by anything unforeseen, except the death or injury. An accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death.

*Vihstadt v. Travelers Ins. Co.*, 709 P.2d 187, 189 (N.M. 1985)(*emphasis in original*)(*quoting Hayden v. Insurance Co. of North America*, 5 Wash.App. 710 (1971)).

The Court cannot say, as a matter of law, that the claim in the *McNair* complaint arose out of acts excluded from coverage under the CA policy. The *McNair* complaint alleges that the "sole and proximate cause of the death of Sharon McNair was the negligence of Dowling." (Doc. No. 48-3 ¶ 22 at 3, filed July 27, 2009). The *McNair* complaint does not state facts from which the Court could determine that the claim falls within the "expected or intended injury" exclusion. Clarendon does not cite any New Mexico case law showing there is an exception to the New Mexico rule that the duty to defend is based solely on the allegations in the complaint and "[i]f the allegations of the

complaint or the alleged facts tend to show that an occurrence comes within the coverage of the policy, the insurer has a duty to defend regardless of the ultimate liability of the insured." *Miller v. Triad Adoption and Counseling Services, Inc.*, 65 P.3d 1099, 1103 (N.M. Ct. App. 2003). In addition, while it is undisputed that Dowling was convicted of depraved mind murder, there are no facts before the Court from which the Court could find that Sharon McNair's death was the natural result of Dowling's voluntary act. *See Knowles v. United Services Automobile Assoc.*, 832 P.2d 394, 398 (N.M. 1992)(clause which excludes "injury or damage which is expected or intended by an insured" "should be construed to exclude harm of the same general type as intended by the insured"); *Transamerica Ins. Group v. Hinkle-Keeran Group, Inc.*, 53 F.3d 343, 1995 WL 251054 *5 (10th Cir. 1995)("when the factual allegations in the complaint are ambiguous, the court in the collateral proceeding may not make factual findings to resolve the ambiguity, the factual determination is not for [the court in the collateral proceeding] but for the court in the primary action.").

The Court will deny that portion of Clarendon's Motion which seeks a declaration that Clarendon has no duty of defense or indemnity under the CA policy.

**IT IS SO ORDERED.**

Dated this 23rd day of March, 2010.

_____
**MARTHA VAZQUEZ**
**CHIEF UNITED STATES DISTRICT COURT**

*Attorney for Plaintiff:*

Scott P. Hatcher
Hatcher & Tebo PA
150 Washington Ave.
Suite 204
Santa Fe , NM 87501

*Attorney for Defendant RBC, L.L.C.:*

Larry Ramirez
715 E. Amador
Suite B
Las Cruces , NM 88001

*Attorney for Defendant Jeremiah Dowling:*

No appearance.

*Attorney for Intervenor William McNair:*

Mark Pickett
Pickett & Murphy
PO Box 1239
Las Cruces , NM 88004

William R. Anderson
Sandenaw & Anderson PC
2951 Roadrunner Parkway
Las Cruces , NM 88011